**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                :
SAMUEL SANTIAGO-GOMEZ,          :
                                : Civil Action No. 06-3608 (JAG)
          Petitioner,           :
                                :
     v.                         :      **O P I N I O N**
                                :
MICHAEL CHERTOFF, et al.,       :
                                :
          Respondents.          :
_____:

**APPEARANCES:**

    SAMUEL SANTIAGO-GOMEZ, Petitioner, <u>Pro</u> <u>Se</u>
    A# 78 829 806
    Middlesex County Adult Correction Center
    MC# 104639
    P.O. Box 266
    New Brunswick, New Jersey 08903

    CHRISTOPHER J. CHRISTIE, United States Attorney
    PETER G. O'MALLEY, Assistant U.S. Attorney
    970 Broad Street, Suite 700
    Newark, New Jersey  07102
    Attorneys for Respondents

**GREENAWAY, JR., District Judge**

    Petitioner, Samuel Santiago-Gomez, is currently being detained by the Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("BICE") at the Middlesex County Correction Center in New Brunswick, New Jersey, pending his removal from the United States.  He filed this petition seeking the issuance of a writ of habeas corpus, under 28 U.S.C. § 2241, challenging his indefinite detention as unlawful and

unconstitutional under Zadvydas v. Davis, 533 U.S. 678 (2001) and Clark v. Martinez, 543 U.S. 371 (2005).

The named respondents are the Bureau of Immigration and Customs Enforcement ("BICE") of the United States Department of Homeland Security ("DHS");[1] Michael Chertoff, DHS Secretary; Alberto Gonzales, U.S. Attorney General; and Edmond C. Cicchi, Warden of Middlesex County Adult Correction Center where petitioner was detained at the time he filed this habeas petition on or about August 3, 2006. The Government filed an Answer to the petition on October 6, 2006, with a certified copy of the relevant administrative record. Petitioner filed a reply brief on October 23, 2006.

## BACKGROUND

Petitioner contends that his detention is not statutorily authorized and deprives him of a liberty interest in violation of the Fifth Amendment of the Constitution of the United States. See Zadvydas, 533 U.S. at 700-701. The Government counters that, because Petitioner has not cooperated sufficiently in the process of securing the necessary travel documents for his removal,

---

[1] Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency of the Department of Justice, and its functions were transferred to the Department of Homeland Security ("DHS"). See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002). The Bureau of Immigration and Customs Enforcement of the DHS is responsible for the interior investigation and enforcement functions that formerly were performed by the INS.

namely, by failing to give adequate or accurate information about the actual country of which he is a national, Petitioner is not entitled to release.

Petitioner alleges that he is a native and citizen of Spain[2] who entered the United States in 1984 without being inspected or legally admitted and without a passport or birth certificate. He asserts that he has remained here in an unlawful status since that time. He alleges that, in 2001, he was convicted in the Superior Court of New Jersey, Monmouth County, on a charge of possession of narcotics offense with intent to distribute, and was sentenced to a term of imprisonment. He states that he completed his state sentence on January 21, 2004, at which time he was transferred to the custody of immigration officials. On February 9, 2004, Petitioner appeared before an Immigration Judge, who ordered his removal to Spain. Petitioner waived his right to appeal. Thus, his order of removal became final on February 9, 2004.

Petitioner insists that he has cooperated in the efforts to remove him by applying for a Spanish passport, providing accurate biographical information, photographs and fingerprints to DHS officials, writing to and speaking with the Spanish Consul, and writing to numerous Consulates in other countries seeking

---

[2] Petitioner states that he was born on January 2, 1969 in Malaga, Spain.  (Petition at ¶ 8).

admission.  Petitioner contends that, at this point, he faces indefinite detention because his removal is not reasonably foreseeable.

Petitioner filed an earlier action before the Honorable Faith S. Hochberg, U.S.D.J., in Santiago-Gomez v. Chertoff, et al., Civil No. 05-2899 (FSH), raising the same arguments for release from indefinite detention.  The Government had responded to the earlier petition, asserting that petitioner has failed to cooperate in providing pertinent information about the location of his birth and names of Spanish relatives, who could assist in locating confirmation of citizenship, necessary in securing travel documents to Spain for his removal.  Judge Hochberg dismissed the petition in Civil No. 05-2899 (FSH), without prejudice, ruling that petitioner's removal is not destined to be indefinite once the BICE/DHS provide the correct information about petitioner's date of birth and family names to officials in Spain.

In her Opinion, filed on March 8, 2006, Judge Hochberg specifically found:

> In this case, the government does not dispute Petitioner's assertions that he entered the United States in 1984 illegally, he has lived here since that time, and he is not in possession of a birth certificate or a passport. Documents produced by the government establish that Petitioner provided requested biographical information to immigration officials, beginning October 24, 2001. (Ex. B to Decl. of counsel.)  The government's documents show that Petitioner was born on January 2, 1969, in Spain to Rafael Santiago Gomez and Maria Lopez Gomez; the nearest large city

4

to Petitioner's place of birth is Malaga; Petitioner's last permanent residence in Spain was no. 575 Calle Granada in Malaga; Petitioner's relative in Spain is Jose Santiago Gomez, his uncle. (Id.). In fact, the form entitled "Information for Travel Document," appears to have been fully completed on October 24, 2001. Moreover, on February 25, 2004, Petitioner made a formal request to the Consulate of Spain for the issuance of a passport, and on August 4, 2004, the Consulate General of Spain interviewed Petitioner regarding the request. (Post Order Custody Review Worksheet, dated Aug. 19, 2004, at p.4, attached as Ex. D to Decl. of counsel.)

However, the documents provided by DHS show that DHS officials reported inaccurate biographical information to Spanish officials in an effort to verify Petitioner's citizenship.[1] Naturally, since immigration officials provided the wrong birth date and incorrect names of Petitioner's parents, Spanish officials found no record of Petitioner's birth. It is entirely possible that, with the correct birth date and names, Spanish officials will be able to verify Petitioner's birth and citizenship, and will agree to issue a passport for Petitioner. Since DHS can correct Petitioner's biographical information and forward the correct information to officials in Spain, Petitioner's detention is not destined to be indefinite. Under these circumstances, it cannot be found that "there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. Petitioner's detention is therefore authorized by 8 U.S.C. § 1231(a)(6), and the Court is constrained to dismiss the Petition. However, the dismissal is without prejudice to

---

[1] The Answer filed by the government in this Court states that Petitioner was born on January 20, 1969, but Petitioner avers, and the INS form completed in 2001 confirms, that his birth date is January 2, 1969. It is not surprising that the Embassy of Spain reported on November 18, 2004, that "after a thorough check on Spanish databases, Samuel Santiago-Gomez, a.k.a. Samuel Guerrar, claiming to be born on 01/20/69 in Malaga (Spain), has showed negative results in every search performed." (Ex. H. to Decl. of Counsel.) Also, the memorandum sent to the Chief Inspector in Spain incorrectly identifies Petitioner's parents as "Manuel Santiago" and "Maria Gomez." (Ex. G to Decl. of Counsel.) The INS form dated October 24, 2001, indicates that their names are "Rafael Santiago Gomez" and "Maria Lopez Gomez." (Ex. B to Decl. of Counsel.)

5

> the filing of another petition in the event that, after correct data has been transmitted to Spain, there is no significant likelihood of removal in the reasonably foreseeable future.

(Judge Hochberg's Opinion, filed March 8, 2006, in <u>Santiago-Gomez v. Chertoff, et al.</u>, Civil No. 05-2899 (FSH), Docket Entry No. 8, at pp. 10-11).

In the present action, Petitioner alleges that, since the district court ruling in Civil No. 05-2899 (FSH), on March 8, 2006, the Government still has failed to remove him because the Spanish Consulate refuses to issue travel documents for petitioner because it can not verify Petitioner's birth records in Spain. Petitioner states that he has provided all the information that he has that was asked of him.

The Government filed an answer to the petition, accompanied by the declaration of counsel and uncertified exhibits obtained from DHS files. (<u>See</u> Docket Entry No. 5, Decl. of Counsel at ¶¶ 2, 3.) Counsel indicates that the United States Attorney's Office has not received the certified administrative record, but has attached uncertified documents to counsel's declaration, as follows: (Exhibit 1) March 14, 2006 letter to the Spanish Consulate General in New York; (Exhibit 2) March 16, 2006 memorandum concerning corrections/changes to Petitioner's identifying information; (Exhibit 3) March 17, 2006 letter from Maria Luisa Huidobro, Deputy Consul General; (Exhibit 4) Warning for Failure to Depart dated April 6, 2006; (Exhibit 5) Warning

6

for Failure to Depart dated May 11, 2006; (Exhibit 6) Warning for Failure to Depart dated June 14, 2006; (Exhibit 7) Warning for Failure to Depart dated July 20, 2006; (Exhibit 8) Warning for Failure to Depart dated August 17, 2006; (Exhibit 9) Warning for Failure to Depart dated September 7, 2006.

The record provided by Respondents show that, on March 17, 2006, after a search based on the corrected information about petitioner's date of birth and parents' names (taken from petitioner's testimony under oath in his earlier habeas action, Civil No. 05-2899 (FSH)), the Deputy Consul General of Spain, Ms. Maria Luisa Huidibro, confirmed by letter that petitioner does not appear registered as a Spanish national in Consulate files. Ms. Huidibro advised a BICE Deportation Officer that "[t]o verify [petitioner's] Spanish nationality, the [BICE] will have to send [] a full verified transcript of his birth record." (Decl. Of Counsel at Ex. 3). Further, Ms. Huidibro informed the BICE that, if petitioner lost his Spanish passport as alleged, he would have to give the date and the name of the city where he obtained his last passport and the number of his Spanish identity card, so that the Consulate General can obtain a travel document. (Id.)

The Government contends that Petitioner continues to be uncooperative in providing the necessary information for his removal. The BICE issued successive Warnings for Failure to Depart to Petitioner on April 6, 2006, May 11, 2006, June 14,

2006, July 20, 2006, August 17, 2006, and September 7, 2006, advising Petitioner of his obligation to cooperate, but to no avail. All of these notices were form notices that did not explain in detail to Petitioner the specific information needed.

In his Reply to the Answer, Petitioner argues that 8 U.S.C. § 1231(a)(1)(C) does not authorize his detention because he made a timely good faith application for a Spanish passport and he has not acted to prevent his removal. Petitioner admits that he has not produced a passport or birth certificate, but he maintains that he does not have these documents and it is not unusual for an alien like himself, who entered illegally 20 years ago, not to possess documents. Petitioner states that he did not mislead immigration officials about his place of birth; and argues that Respondents gave inaccurate information to Spanish officials regarding Petitioner's date of birth and parents' names. Petitioner insists that, even if this mistake were corrected, his removal would not necessarily be foreseeable because, "according to Spanish citizenship law, birth within [the] territory of Spain does not automatically confer citizenship." He further argues that his continuing detention for more than two years is not his fault.

**DISCUSSION**

**A.     Jurisdiction**

Petitioner seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241(c)(3). That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, this Court has subject matter jurisdiction over this petition because petitioner was detained within its jurisdiction at the time he filed his petition, and because petitioner asserts that his indefinite detention, since February 2004, is not statutorily authorized and is constitutionally impermissible pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001) and Clark v. Martinez, 543 U.S. 371 (2005).

**B.   Standard of Review**

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**C. <u>Discussion</u>**

Post-removal-order detention is governed by 8 U.S.C. § 1231(a). Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day "removal period."

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days. However, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard. Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a resident alien must be released if he can establish that his removal is not reasonably foreseeable. See <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001); <u>Clark v. Martinez</u>, 543 U.S. 371 (2005).

The alien bears the initial burden of establishing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to

rebut that showing. Zadvydas, 533 U.S. at 699-701. See also, e.g., Xi v. U.S. I.N.S., 298 F.3d 832, 839-40 (9th Cir. 2002); Kacanic v. Elwood, 2002 WL 31520362 (E.D. Pa. Nov. 8, 2002); Fahim v. Ashcroft, 227 F. Supp.2d 1359, 1367-68 (N.D. Ga. 2002); Lema v. U.S. I.N.S., 214 F. Supp.2d 1116, 1117-18 (W.D. Wash. 2002), aff'd, 341 F.3d 853 (9th Cir. 2003).

In addition, in assessing whether an alien has made the required showing, it must be remembered that, while the Supreme Court in Zadvydas emphasized that the expiration of the six-month presumptively-reasonable period of detention did not mandate release, it also stated that as the period of detention grows "what counts as the 'reasonably foreseeable future' conversely shrinks." 533 U.S. at 701.

Here, the Government contends that Petitioner has refused, or otherwise failed, to provide accurate information or documents needed to complete his application for a travel document to Spain, and thus, has failed to cooperate with his removal as required by statute. Specifically, the Government states that Petitioner's detention beyond the removal period falls under 8 U.S.C. § 1231(a)(1)(C), because Petitioner's failure to cooperate with removal efforts tolls the removal period. The Government contends that Petitioner's refusal to cooperate is continuing. See 8 U.S.C. § 1231(a)(1)(C) ("The removal period shall be extended beyond a period of 90 days and the alien may remain in

11

detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.").[3] See also Abimbola v. Ridge, 2005 WL 588769 *2 (D. Conn. 2005)("a self-inflicted wound cannot be grounds for a Zadvydas claim").

In this case, the BICE attempts to document Petitioner's purported failure to cooperate with removal efforts, but it is clear that the initial problem with obtaining travel documents was the fault of BICE. The BICE admittedly gave inaccurate information to Spanish officials. Although such information was

---

[3] The Government also refers to 8 C.F.R. § 241.13(e)(2) as a ground for denying Petitioner's request for release from detention pending removal. This regulation provides that an alien's lack of cooperation with the removal process can serve as a ground for denying release:

> (2) Lack of compliance, failure to cooperate. The HQPDU shall first determine if the alien has failed to make reasonable efforts to comply with the removal order, has failed to cooperate fully in effecting removal, or has obstructed or hampered the removal process. If so, the HQPDU shall so advise the alien in writing, with a copy to counsel of record by regular mail. The HQPDU shall advise the alien of efforts he or she needs to make in order to assist in securing travel documents for return to his or her country of origin or a third country, as well as the consequences of failure to make such efforts or to cooperate, including the provisions of section 243(a) of the Act. The Service shall not be obligated to conduct a further consideration of the alien's request for release until the alien has responded to the HQPDU and has established his or her compliance with the statutory requirements.

corrected by BICE, it still did not yield any results. Spanish officials then recommended that the Government obtain other information, namely a passport, birth certificate, or information from Petitioner regarding the last place and time he obtained a passport. Petitioner has not been able to provide such information to the BICE because he maintains that he does not have a passport or birth certificate, which is not an unusual situation given his illegal entry and stay in the U.S. for more than 20 years. See Abdel-Muhti v. Ashcroft, 314 F. Supp.2d 418 (M.D.Pa. 2004); Seretse-Khama v. Ashcroft, 215 F. Supp.2d 37 (D.D.C. 2002). Moreover, Petitioner has not been idle in effecting his removal. He has written to other third countries in an effort to secure his removal by other means than to Spain, which at this time declines to issue travel documents without verification of Petitioner's citizenship.[4] Thus, Petitioner has provided evidence of cooperation, and there is no clear evidence that Spain's refusal to issue travel documents is due to the fault of Petitioner.

This Court finds that respondents' allegation of non-cooperation does not appear to be based on any evidence of actual

---

[4] In his earlier action, Petitioner documented that he has written directly to the Spanish Consulate, as well as to the following third countries – South Africa, Great Britain, Germany, Austria, and Ireland. No country has been willing to accept Petitioner at this time without verification of his Spanish citizenship.

13

obstruction or delay by Petitioner to thwart his removal actively.  As demonstrated above, Petitioner has proven his cooperation in removal efforts by complying with the Government's requests for information.

In contrast, the BICE has done little more than issue blanket warnings for failure to depart to Petitioner on a monthly basis.  These form warning notices do not detail what further information Petitioner must provide different from what he has already provided to the BICE.  Further, it is clear that Spanish officials will not issue travel documents without Petitioner's birth certificate or passport, for which there is no record in Spain.  Petitioner does not appear to be able to provide further documentation or identification information, and Spanish officials have confirmed that they are unable to verify Petitioner's birth records.  Consequently, respondents have not established a sufficient basis on which to detain Petitioner indefinitely, and have failed to rebut Petitioner's claim that his removal is not reasonably foreseeable.  See Abdel-Muhti, 314 F. Supp.2d at 430-31.  See also Mitchell v. Gonzales, 2007 WL 121348 (N.D.Fla. Jan. 12, 2007); Koljenovic v. Ashcroft, 2006 WL 3325650 (M.D.Pa. Oct. 27, 2006); Seretse-Khama, 215 F. Supp.2d at 47-52; Clark v. Ashcroft, 2003 WL 22351953 (E.D. Pa. Sept. 16, 2003).

It has been more than two years since Petitioner was taken into custody and his order of removal became final.  All efforts by the BICE and plaintiff to obtain travel documents from Spain or third countries have been unsuccessful.  Therefore, based on <u>Zadvydas</u>, Petitioner's continued detention is no longer presumptively reasonable.  Petitioner has shown, and the Government has failed to rebut, substantial evidence that his removal is unlikely in the reasonably foreseeable future.  Moreover, Respondents have not demonstrated that Petitioner's alleged failure to cooperate is hindering their efforts to remove him.  The record here clearly shows that Petitioner has complied with BICE requests and has made a good faith effort to obtain travel documents from Spain and other third countries, to no avail.

Therefore, this Court finds that Petitioner is entitled to immediate supervised release pending his removal.  Inadmissible or criminal aliens, such as Petitioner here, must be subject to terms of supervision if released pending removal.  <u>See</u> 8 U.S.C. § 1231(a)(6).

General terms of supervision are prescribed under  8 U.S.C. § 1231(a)(3), and require the alien: (A) to appear before an immigration officer periodically for identification; (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government; (C) to give

15

information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien." 8 U.S.C. § 1231(a)(3)(governing supervision after removal period). Therefore, the Respondents will be directed to release Petitioner from custodial detention under such terms and conditions deemed necessary pursuant to 8 U.S.C. §§ 1231(a)(3), (6).

## CONCLUSION

For the reasons set forth above, this Court shall grant the petition for a writ of habeas corpus under 28 U.S.C. § 2241, and the Court will issue an Order directing Respondents to release Petitioner immediately subject to terms and conditions of supervision deemed appropriate pursuant to 8 U.S.C. §§ 1231(a)(3), (6). An appropriate order follows.


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.


Dated: January 30, 2007